**SALEM TRANSPORTATION CO., Inc.,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants,

and

**Yellow Limousine Service, Inc.,**
Intervenor.

No. 68 Civ. 1248(MP).

United States District Court,
S. D. New York.

June 29, 1970.

Rosen & Rosen, by George H. Rosen, and William C. Rosen, Monticello, N. Y., for plaintiff.

Whitney North Seymour, U. S. Atty., S.D. New York, by John H. D. Wigger, Washington, D. C., Robert W. Gennane, Gen. Counsel, Interstate Commerce Commission, by Nahum Litt, Washington, D. C., for defendants.

Zelby & Burstein, by Arthur Liberstein, New York City, and Schnader, Harrison, Segal & Lewis, by William M. Barnes, Philadelphia, Pa., for intervenor.

Before KAUFMAN, Circuit Judge, and MacMAHON and POLLACK, District Judges.

## OPINION

POLLACK, District Judge.

A three-judge district court has been convened pursuant to 28 U.S.C. §§ 2325 and 2284 on the complaint of Salem Transportation Co., Inc. ("Salem" hereafter) against the Interstate Commerce Commission ("ICC" hereafter). The complaint asserts that by an order the ICC issued in November, 1967, it is sanctioning a violation of a certificate of public convenience and necessity held by Salem's competitor, Yellow Limousine Service, Inc., ("Yellow" hereafter). Moreover, Salem claims that in so doing the ICC is being inconsistent with its own prior rulings. Yellow has appeared as an intervenor opposing Salem's complaint.

Salem seeks an injunction restraining operation of the ICC order. That order adopts the report and findings of a hearing examiner and rejects Salem's demand that the ICC issue a direction to Yellow to cease and desist its questioned conduct.

Salem's petition for a reconsideration of the ICC order was denied on March 8, 1968.

Jurisdiction in this Court is premised on 28 U.S.C. § 1336; venue, on 28 U.S.C. § 1398.

The facts are as follows.

Both Salem and Yellow operate a limousine service between the Philadelphia International Airport and Atlantic City, New Jersey, under the jurisdiction and authority of the ICC.[1]

According to the certificate of public convenience and necessity authorizing its operations, Salem is to provide special operations, non-scheduled door-to-door service over irregular routes; Yellow's certificate calls for scheduled service over a specified regular route.

In the complaint it filed with the ICC, Salem alleged that Yellow was operating in violation of its certificate. Although Yellow had scheduled departure times, it did not have scheduled arrival times; moreover, it picked up passengers from and delivered passengers to, their particular hotels, motels, and boarding houses in Atlantic City, thus performing unauthorized door-to-door service.

The Commission's November, 1967 order found that Yellow had been in violation of its certificate. However, a cease and desist order was not issued because the ICC also found that Yellow was " 'taking immediate steps to revise its schedule in order to designate therein the times of arrival at points of destination, and to designate the Chalfonte-Haddon Hall Hotel as its terminal in Atlantic City'." Salem Transp. Co., Inc. v. Yellow Limousine Service, Inc., 107 M. C.C. 463, 464 (1967).

The hearing examiner's report adopted by the Commission included the statement, "The above conclusion [that Yellow was operating in violation of its certificate], however, is not to be construed as precluding Yellow, after it establishes a terminal point in Atlantic City and offers and renders fixed departure and arrival schedules, from picking up and discharging passengers at other locations within the corporate limits of Atlantic City as an adjunct to its regular-route service between the Airport and its Atlantic City . terminal." 107 M.C.C. at 470–71.

It is this sanction which Salem would have this Court set aside and enjoin.

---

1. Salem is authorized to serve the city of Philadelphia in its entirety. The airport lies within the city limits.

█ The power of a Court is restricted when it is called upon to review the determination of an administrative agency. The Court is "limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene." United States v. Pierce Auto. Freight Lines, 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821, 835 (1946). See also, Western Union Telegraph Co. v. United States, 217 F.2d 579 (2d Cir.1954), and cases cited therein.

█ Plainly a permissible administrative determination was made here. It was within the ICC's powers; and because we reject Salem's allegations that it was inconsistent with prior Commission rulings, we find no abuse of administrative discretion.

Pursuant to 49 U.S.C. § 308(c), the ICC has prescribed regulations, which appear at 49 C.F.R. § 1054, governing transportation of special or chartered parties. 49 C.F.R. § 1054.6(b) permits common carriers of passengers which are authorized to engage in regular route service between fixed termini to sell individual tickets to, and to make separate and individual transportation arrangements with, passengers who will travel in the same vehicle. The regulation merely prohibits carriers from transporting these passengers to points not on their regular route. In its order of November, 1967, the ICC found that all of Atlantic City, hence all of the city's hotels, were on Yellow's route. Such a finding was not made in abuse of the Commission's discretion for two reasons. The first reason is grounded on the terms of Yellow's certificate. No route to be followed within Atlantic City is specified in Yellow's certificate; no point of embarkation or disembarkation is named. The ICC has previously held that if a certificate does not designate specific streets to be travelled within a municipality, it is permissible for a carrier to travel throughout the municipality and to change its route within that municipality at will, subject only to police or other local regulation. Hudson Bus Transp. Co., Inc. Passenger Service, 46 M.C.C. 377, 384–85 (1946); Lincoln Tunnel Applications, 12 M.C.C. 184 (1939).

The second reason is predicated on 49 U.S.C. § 302(c) (2), the so-called "terminal area exception" which permits motor carriers to perform transfer, collection, and delivery services within their terminal areas. Salem has suggested that such services must be performed by vehicles different from those which operate between terminal areas; however, the Commission has held that either the same or different vehicles may be used, The Greyhound Corp.—Investigation and Revocation of Certificates, 84 M.C.C. 169 (1960), and that "terminal areas of passenger carriers are * * * the corporate limits of the points they serve." Rose Extension-Cheshire, Conn., 86 M.C.C. 723, 724 (1961).[2]

---

2. Twenty years ago when the ICC issued a series of orders interpreting 49 U.S.C. § 302(c) it "recognized that [pick up and delivery] services [by passenger carriers] might be nonexistent, but did not except passenger carriers from the application of the findings because * * * [such] services * * * [were] conceivable and might exist in some instances," Commercial Zones and Terminal Areas, 54 M.C.C. 615, 619 (1952). Less than ten years later, the Commission wrote, "[P]assenger carriers were unable to provide a door-to-door pickup and de-livery service to individual passengers with the same degree of practicability and economy that could be obtained by freight haulers * * * Accordingly, passengers were required to come to the carrier at specific boarding points * * * Recent developments, however, have made it necessary for passenger carriers to attempt to achieve the maximum in service in order to render a competitively effective and economically efficient transportation service." Administrative Ruling No. 102, 82 M.C.C. 581, 591 (1960).

Not only does 49 U.S.C. § 302(c) support the Commission's conclusion that all of Atlantic City is Yellow's terminal area, it also permits Yellow to perform pick up and delivery within that area.

Salem contends that the Commission has been inconsistent in its rulings. Salem claims that a motor carrier which performs a pick up and delivery service like Yellow's no longer fits into one of the three "basic and distinct types of passenger transportation service" described by the Commission at Sheet 7 of Ex Parte No. MC–20 sub. 1.

The Commission has explained that supposed inconsistency in a ruling holding that one-mile deviations from a specified regular route to collect and discharge passengers are compatible with authorized regular route service:

> We do not believe that the proposed construction of operating rights will change the character of a carrier's operations from regular-route bus service to "anywhere-for-hire" bus service over irregular routes. The basic distinction between these two types of operations lies not in the rigid and inflexible traversal of specifically designated highways, roads, or streets, as compared to the use of unspecified routes, but rather the status of a carrier's operations is governed by the essential attributes of the service afforded. Thus, *the regular, frequent, and expeditious transportation of passengers between two or more points constitutes the fundamental characteristic of an ordinary regular-route bus service*, whereas carriers engaged in special or charter operations perform certain services in addition to, or fundamentally different from, those normally provided by a common carrier whose facilities and operations are devoted principally to the expeditious transportation of passengers between fixed termini.

Administrative Rule No. 102, *supra*, 82 M.C.C. at 588–89. (Emphasis added)

■ Salem also contends that the order under review discriminates against it and is inconsistent with the ICC's holding in Salem Transportation Co., Inc., Petition to Amend Westchester-Atlantic City Authority, 100 M.C.C. 373 (1966). The Commission there refused to authorize Salem to operate a scheduled door-to-door service. That result is not inconsistent with the order under review.

Salem already had authority to operate door-to-door service from New York City or Philadelphia to Atlantic City on a non-scheduled basis. It also served a number of other points on separate routes. It sought ICC permission to perform scheduled door-to-door service from all of these points. The Commission doubted Salem's ability to perform because of the vast territory to be covered in the New York and Philadelphia areas. MC–107583 (Sub.No.18) at 33, the hearing examiner's report in 100 M. C.C. 373. Furthermore, such performance, if it could be accomplished, would change the fundamental characteristics of the certificated service; Salem would then be supplying regular bus transportation and not an irregular service. The Commission has found in this case that pick up and delivery service in the terminal area of Atlantic City does not change the fundamental characteristics of Yellow's certificated regular route service.

The respective determinations of the ICC are properly within the informed discretion of an administrative body.

The viability of Yellow's service, which depends on its continued ability to provide pick up and delivery service, is in the public interest and nothing in Salem's certificate gives it the right to be free from any competition.

Salem's complaint, accordingly, is dismissed.

So ordered.